UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------

FERNEY DARIO RAMIREZ,

                    Petitioner,

      - against -

UNITED STATES OF AMERICA,

                    Respondent.

--------------------------------------------------

09 Civ. 4397 (JGK)

MEMORANDUM OPINION AND
ORDER

JOHN G. KOELTL, District Judge:

    The petitioner, Ferney Dario Ramirez (the "petitioner"), appearing pro se, moves pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.  He also moves pursuant to Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927 for an Order to Show Cause for sanctions and contempt against the Assistant United States Attorney in this case and the petitioner's trial counsel, B. Alan Seidler, Esq.

I.

A.

    On May 6, 2004, the petitioner pleaded guilty to one count of conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), and 846 pursuant to a written plea agreement, dated May 3, 2004.  In the plea agreement, the parties stipulated that the petitioner had a base offense level of 36 pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1(a)(3), because the offense involved

approximately 118 kilograms of cocaine, and that the petitioner was entitled to a three-level reduction pursuant to U.S.S.G. § 3E1.1 for acceptance of responsibility.  (Joint Appendix on Appeal ("J.A.") at A12.)  As a result, the parties stipulated to a criminal offense level of 33.  (Id.)  In addition, the parties agreed that the petitioner was in Criminal History Category II because of a prior felony conviction in Maryland that resulted in a three-year prison sentence.  (Id.)  Based on the petitioner's offense level and criminal history, the plea agreement provided for a stipulated sentencing guidelines range of 151 to 188 months imprisonment.  (J.A. at A12-A13.)  The plea agreement also acknowledged that 21 U.S.C. § 841 required a statutory mandatory minimum term of 120 months.  (J.A. at A13.)  There were no provisions in the plea agreement relating to a possible reduction of the petitioner's sentence based on cooperation.

        As part of the plea agreement, the petitioner agreed not to seek or suggest a departure or any adjustment to the stipulated sentencing guidelines range.  (J.A. at A13.)  The Government retained the right to oppose any reduction of the petitioner's offense level for acceptance of responsibility under certain circumstances.  (J.A. at A12-A13.)  The Government also retained the right to seek an upward adjustment if the petitioner moved to withdraw his guilty plea once entered, engaged in conduct,

2

unknown to the Government at the time it entered into the plea agreement, that constituted obstruction of justice, or committed another crime after signing the plea agreement. (J.A. at A12-A13.)  In the plea agreement, and at the plea allocution before this Court, the petitioner acknowledged that neither the Probation Department nor the Court was bound by the stipulated sentencing guidelines range, and that he understood he would not be able to withdraw his guilty plea if the Court imposed a sentence outside the stipulated guidelines range. (J.A. at A13-A14, A31:2-8, A33:6-16.)

The petitioner entered his guilty plea on May 6, 2004, with the assistance of a Spanish interpreter. (J.A. at A17-A18:5-16.)  Before accepting the plea, this Court advised the petitioner of each of the constitutional rights he would be waiving by pleading guilty. (J.A. at A22:9-A24:25.)  The petitioner indicated his understanding and his desire to plead guilty. (J.A. at A22:9-A24:25.)  The petitioner indicated that he had discussed the waiver of indictment and his guilty plea with his attorney. (J.A. at A21:11-18, A25:1-10.)  The Court asked, "Are you satisfied with Mr. Amsel and his representation of you?" (J.A. at A21:19-20.)  The petitioner responded, "Yes." (J.A. at A21:21.)  The Court summarized the charges for him. (A25:11-A27:12.)  The Court explained the maximum penalties for the crimes as well as the mandatory minimum penalties and the

petitioner said that he understood.  (J.A. at A27:13-A28:18.)
This Court then explained that, under the law at the time, there
were sentencing guidelines that judges were required to follow
in determining the petitioner's sentence, and the petitioner
indicated that he had discussed the sentencing guidelines with
his attorney.  (J.A. at A29:12-16.)

The petitioner acknowledged that the plea agreement had
been translated for him before he signed it and that he fully
understood it.  (J.A. at A31:15-25.)  He confirmed that the plea
agreement contained "everything that [he] underst[oo]d about
[his] plea and [his] sentence."  (J.A. at A32:5-7.)  The
petitioner stated that no promises or threats had been made to
him to induce him to plead guilty, or to enter into the plea
agreement.  (J.A. at A32:10-13.)

B.

On February 3, 2005, the petitioner's new counsel, B. Alan
Seidler, Esq., submitted a letter on the petitioner's behalf
seeking permission to withdraw from the plea agreement.  (J.A.
at A43.)  The letter stated that in light of United States v.
Booker, 543 U.S. 220 (2005), the petitioner believed he could
achieve a sentence below the guideline range of 151 to 188
months.  (J.A. at A43.)  The petitioner subsequently filed a
letter motion dated April 25, 2005, supporting his application
to withdraw from the plea agreement.  In the letter, the

4

petitioner stated that he never would have entered into the Plea
Agreement if Amsel had advised him of the holding and sentencing
implications of Apprendi v. New Jersey, 530 U.S. 466 (2000) and
its progeny, and that "he believed he had no choice but to enter
into a plea agreement . . . that provided for the mandatory
application of the sentence[ing] guidelines." (Addendum to
Government's 2d Cir. Br. ("Add.") at 3.) The Government
responded, arguing that under Brady v. United States, 397 U.S.
742 (1970), the petitioner was not permitted to withdraw from
the plea agreement simply because his calculus may have been
altered by unforeseen changes in the law, and emphasizing the
fact that "the possibility that the law would change favorably
for [the petitioner] after his plea agreement is simply one of
the risks that accompanies pleas and plea agreements." (J.A. at
A48, A51 (internal quotation marks omitted) (quoting United
States v. Morgan, 406 F.3d 135, 137 (2d Cir. 2005)).) In
addition, the Government clearly stated that if the petitioner
withdrew from the plea agreement, it would seek additional
enhancements and ask the Court to deny any reductions based on
acceptance of responsibility. (J.A. at A51.) The Government
further explained that if the petitioner was permitted to
withdraw from the plea agreement, the Government would be
entitled to prove additional relevant conduct and seek
enhancements based on additional evidence. (J.A. at A51.) As a

5

result, the Government suggested that it would argue for enhancements resulting in a combined offense level of 40, and a Guidelines sentencing range of 324 to 405 months. (J.A. at A52.)

On June 9, 2009, the parties appeared before this Court for a hearing on the petitioner's motion to withdraw from the plea agreement. This Court reviewed the parties' arguments, and explained that if the petitioner were permitted to withdraw from the plea agreement, "the plea agreement would no longer be binding on either side." (J.A. at A56:12-15.) This Court then described the applicable standard for withdrawal from a plea agreement. (J.A. at A57:1-13.) Seidler stated that the petitioner was still interested in proceeding with the motion, and that the petitioner understood that the Government would no longer be bound by the plea agreement. (J.A. at A57:24-A58:6.) Seidler also confirmed that the petitioner was aware of the Government's higher sentencing estimate, and that the Government was free to argue for a higher sentence which the Court could consider. (J.A. at A58:11-17.) Seidler argued that there had been "significant change in the sentencing procedures," and that the petitioner should not be bound by the former procedures embodied in the plea agreement. (J.A. at A59:25-A60:7.)

The Government acknowledged the statements by Seidler, and requested that the Court directly inquire of the petitioner "as

6

to whether he believes he has had an adequate opportunity to
discuss this with counsel and whether this is truly what he
wants to do." (J.A. at A62:9-12.) This Court responded by
stating that everything it had said had been translated for the
petitioner, and that Seidler had reviewed the issue on several
occasions with the petitioner, but that the parties could
confirm the petitioner's voluntary and knowing decision at a
subsequent hearing. (J.A. A62:24-A63:25.)

Following further colloquy with the parties, this Court
stated that it was inclined to grant the petitioner's
application to withdraw from the plea agreement. (J.A. at
A78:10-14.) The petitioner was placed under oath, and confirmed
that he understood the Court and could communicate with the
Spanish interpreter. (J.A. at A79:8-16, A79:25-A80:4.) The
petitioner confirmed that he understood that the "purpose of the
proceeding was to ensure that he was making the application to
withdraw from the plea agreement knowingly, voluntarily, and
with a full understanding of its consequences." (J.A. at
A80:19-24.) This Court confirmed that the petitioner understood
that there was a provision in the plea agreement that the
sentencing guidelines range was 151 to 188 months imprisonment,
but that the plea agreement was not binding on the Court, which
would "in any event have to make an independent determination of
the appropriate sentence in [the petitioner's] case." (J.A. at

7

A81:4-12.)  The petitioner acknowledged that without the plea
agreement, the Government would be "free to argue for a sentence
in excess of 188 months imprisonment." (J.A. at A82:1-4.)  The
petitioner further indicated that he understood the that the
Government had stated that it would argue for a guideline
sentencing range of 324 to 205 months.  (J.A. at A82:10-16.)
The petitioner acknowledged that by withdrawing from the plea
agreement, he was freeing the Government to argue for, and
present any appropriate evidence in support of, a much higher
sentence than that provided in the agreement, and confirmed that
he still wanted to withdraw from the plea agreement.  (J.A. at
A82:17-25.)  The petitioner confirmed that he discussed the
matter thoroughly with his lawyer, and that he had made the
application to withdraw from the plea agreement knowingly and
voluntarily, free from any threats or inducements.  (J.A. at
A83:1-10.)  Finally, the petitioner acknowledged that he was
facing a 10-year mandatory minimum, meaning that the lowest
sentence he could receive if he withdrew from the plea agreement
was 120 months imprisonment.  (J.A. at A83:22-A84:1.)

     This Court found that the petitioner's application to
withdraw from the plea agreement was knowing and voluntary, and
granted the application so that the plea agreement was not
binding on the petitioner or the government.  (J.A. at A84:7-
20.)

C.

The parties appeared for a <u>Fatico</u> hearing before this Court on March 30, 2006, in order to resolve factual disputes between them, in particular the amount of drugs involved and the petitioner's conduct and role in the offense.  The Government called three witnesses and introduced various telephone recordings and records establishing that the petitioner had been involved in buying, selling, and transporting more than 118 kilograms of cocaine, and that he attempted to get one of his cohorts to lie to federal investigators about his relationship with the petitioner and offered money to the wife of another cohort. (<u>See</u> J.A. at A87–A259.)

On May 25, 2006, the petitioner appeared before this Court for sentencing.  Seidler made applications for downward departures from the sentencing guidelines based on prison conditions and the petitioner's family circumstances.  (<u>See</u> J.A. at A264:4-19.)  He also made an application for the Court to recommend that the petitioner be sent to Miami, Florida to serve his sentence because the petitioner had family in Florida. (J.A. at A298:13-A299:1.)  In addition, Seidler urged the Court to disregard the evidence presented at the <u>Fatico</u> hearing of obstruction of justice, alleging that the Government's witnesses were unreliable, and that the credible evidence did not

necessarily demonstrate an obstruction of justice.  (J.A.
278:15-A279:5.)

Throughout the sentencing proceeding, Seidler argued that
under Apprendi and its progeny, "the statutory maximum is
dependent upon the maximum penalty that the Court could impose
based on statements by the defendant or a finding by a jury."
(J.A. at A267:1-4.)  Seidler asserted that the statutory maximum
for the petitioner's sentence should be based on 118 kilograms
of cocaine because the petitioner had not admitted to, nor had a
jury found, that the petitioner was involved with more than 118
kilograms.  (J.A. at A268:11-19.)  This Court explained that
under Apprendi and its progeny, the petitioner could only "be
sentenced to the offense for which he pleaded guilty or the jury
found the elements beyond a reasonable doubt.  The offense to
which [the petitioner] pleaded guilty was a violation of 846,
conspiracy to violate 812, 841(b)(1)(A) . . . . Having admitted
that, the potential maximum penalty is . . . life and [the]
mandatory minimum penalty [is] ten years."  (J.A. at A272:25-
A273:10.)  That crime required only five kilograms of cocaine.
Once that threshold was passed, the maximum sentence was life
imprisonment and the mandatory minimum term of imprisonment was
ten years.  Seidler argued against the Court's interpretation of
the cases, and the Court further explained that while evidence
of the amount of drugs is necessary for "a determination of

whether the [petitioner] can be held to have violated (b)(1)(A) or (b)(1)(B)," in this case, the petitioner admitted at the plea allocution to an amount of drugs that established a violation of (b)(1)(A).  (J.A. at A273:25-A274:3.)  Thus, while the Court could not sentence the petitioner for a violation of (b)(1)(A) if he had not admitted to the requisite amount of drugs, once the petitioner admitted to a violation of (b)(1)(A), the mandatory statutory minimum was ten years and the maximum was life pursuant to (b)(1)(A).  (J.A. at A274:3-5.)  Thus, the court made it clear that the petitioner's plea had no affect on the maximum statutory sentence for the offenses to which he pleaded.  Seidler admitted that no case supported his theory, but continued to argue that the petitioner's maximum sentence should be based on no more than the 118 kilograms of cocaine that the petitioner admitted to at the plea allocution. (J.A. at A276:13-A277:18.)

After hearing from the Government, this Court confirmed that Seidler had reviewed the presentence report, recommendation, and the addendum and discussed it with the petitioner.  (J.A. at A297:22-25.)  The petitioner acknowledged that he had reviewed the presentence report, the recommendation, and the addendum with Seidler, and then spoke on his own behalf. (J.A. at A299:7-A300:9.)

Based on evidence provided at the Fatico hearing, this Court found that pursuant to U.S.S.G. § 2D1.1(c)(1) the petitioner had a base offense level of 38 because more than 150 kilograms of cocaine were involved in the offense. (J.A. at A307:12-15, A309:22-24.)  This Court applied a two-level enhancement under U.S.S.G. § 3B1.1(c), based on its finding that the petitioner was an "organizer, leader, manager or supervisor." (J.A. at A310:8-24.)  This Court also found that the petitioner was subject to a two-level adjustment for obstruction of justice under U.S.S.G. § 3C1.1 because the petitioner "willfully attempted to obstruct or impede the administration of justice during the investigation of the instant offense." (J.A. at A311:4-6.)  This Court found that the petitioner was not entitled to any credit for accepting responsibility, because, among other things, he attempted to obstruct justice. (J.A. at A311:21-A312:5.)  Finally, this Court found that the petitioner was not entitled to a one-point credit, under U.S.S.G. § 3D1.1B, for timely notifying the authorities of his intention to plead guilty and thereby saving resources, because of the effort expended on the Fatico hearing, and because he was not entitled to the two-point reduction for accepting responsibility. (J.A. at A312:6-18.)  The Court rejected the defendant's application for downward departures. (J.A. at A312:23-A314:6.)  Accordingly, the Court determined

12

that the petitioner's offense level was 42, and that, in
Criminal History Category II, his sentencing range under the
Guidelines was 360 months to life.  (J.A. at A314:7-11.)  The
Court noted that the petitioner had rejected a plea agreement
that would have provided for a sentence of 151 to 188 months "in
the face of warnings by the Court about the much higher
guideline calculation that the government contended would apply
after a Fatico hearing."  (J.A. at A314:20-25.)  This Court then
considered all of the factors set forth in 18 U.S.C. § 3553(a),
and sentenced the petitioner to 210 months imprisonment followed
by five years post release supervision, and a one-hundred-dollar
special assessment.  (J.A. at A315:17-318:1.)

     The petitioner appealed his conviction, arguing that this
Court erred in granting his motion to withdraw from the plea
agreement, and that he received ineffective assistance of
counsel in connection with his decision to withdraw from the
plea agreement.  The Second Circuit Court of Appeals affirmed
the petitioner's conviction and sentence by this Court, United
States v. Ramirez, No. 06 Cr. 2869, 2008 WL 89641 (2d Cir. Jan.
9, 2008), finding that this Court did not commit plain error by
granting the petitioner's motion to withdraw from the plea
agreement, and dismissing the claims for ineffective assistance
of counsel without prejudice to raise them in a motion pursuant

to 28 U.S.C. § 2255 because further development of the record was required.

The petitioner now argues that he received ineffective assistance of counsel in connection with his decision to withdraw from the plea agreement and at sentencing, and ineffective assistance of appellate counsel.  The petitioner requests that the Court reinstate the plea agreement and resentence the petitioner accordingly.  In the alterative, the petitioner requests an evidentiary hearing for all of his claims of ineffective assistance of counsel.  The petitioner also brings a motion for contempt against his trial counsel, Seidler, and the Assistant United States Attorney who represented the Government in this case.

II.

The petitioner claims he received ineffective assistance of counsel from Seidler.  Specifically, the petitioner alleges that Seidler was operating under an actual conflict of interest, and that Seidler gave objectively deficient advice with respect to withdrawing from the plea agreement which prejudiced the petitioner.  The petitioner also asserts that Seidler provided ineffective assistance of counsel at the petitioner's sentencing when he failed to challenge the petitioner's prior conviction in Maryland.

A.

The petitioner claims Seidler was ineffective because he had an actual conflict of interest that adversely affected his performance.

The Sixth Amendment right to assistance of counsel includes the right to be represented by an attorney who is free from conflicts of interest.  See, e.g., Wood v. Georgia, 450 U.S. 261, 271 (1981); United States v. Schwarz, 283 F.3d 76, 90 (2d Cir. 2002).  This right would be violated if the attorney has "(1) a potential conflict of interest that result[s] in prejudice to the defendant, or (2) an actual conflict of interest that adversely affect[s] the attorney's performance." United States v. Levy, 25 F.3d 146, 152 (2d Cir. 1994).  "An attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action." Schwarz, 283 F.3d at 91 (internal quotation marks omitted).  An attorney has a potential conflict of interest if "the interests of the defendant may place the attorney under inconsistent duties at some time in the future." United States v. Kliti, 156 F.3d 150, 153 n. 3 (2d Cir. 1998); see also United States v. Armaza, 280 F. Supp. 2d 174, 178-79 (S.D.N.Y. 2003).

In this case, the petitioner alleges that Seidler had an actual conflict of interest.  In order to establish that an actual conflict of interest adversely affected Seidler's performance, the petitioner must show "that [Seidler's] interests diverged from [his] on some material legal or factual issue and resulted in 'an actual lapse in representation.'" Triana v. United States, 205 F.3d 36, 40-41 (2d Cir. 2000) (quoting Cuyler v. Sullivan, 446 U.S. 335, 348-49 (1980)); see also United States v. O'Neil, 118 F.3d 65, 71 (2d Cir. 1997). "An actual lapse in representation is demonstrated by the existence of some plausible alternative defense strategy not taken up by counsel." United States v. Moree, 220 F.3d 65, 59 (2d Cir. 2000) (internal citations and quotation marks omitted). In this regard the petitioner does not need to show that the alternative defense "would necessarily have been successful." Id. (internal quotation marks and citations omitted).  It would be sufficient to show that the alternative strategy "possessed sufficient substance to be a viable alternative."  Id. (internal quotation marks and citations omitted).  The petitioner must show that the alternative defense was "inherently in conflict with or not undertaken due to the attorney's other loyalties or interests."  Id. (internal quotation marks and citations omitted) (emphasis in original).  In other words, the petitioner must show that "trial counsel chose not to undertake [the

16

alternative strategy] because of his conflict." Winkler v. Keane, 7 F.3d 304, 309 (2d Cir. 1993); see also Garcia-Giraldo v. United States, 691 F. Supp. 2d 500, 513-14 (S.D.N.Y. 2010).

The petitioner claims that Seidler had an actual conflict of interest because of an alleged personal financial interest in the petitioner withdrawing from the plea agreement. The petitioner contends that Seidler had a personal financial interest because he was hired in order to assist the petitioner in withdrawing from the plea agreement. The petitioner claims that this case is analogous to Winkler, in which an attorney was found to have an actual conflict of interest based on his personal financial interest when a contingency fee was attached to the attorney obtaining an acquittal. Unlike in Winkler, there was no contingency fee in this case. Seidler's only 'personal financial interest' was in being hired, which is present whenever an attorney consults with a potential client. Once hired, Seidler received a flat rate for representing the petitioner in the case going forward, whatever that representation entailed. (Seidler Decl. ¶ 3.) Although Seidler's work would have been minimal if the petitioner had not sought to withdraw from the plea agreement, his payment was not contingent on the petitioner's successful withdrawal from the plea agreement. The petitioner chose to hire Seidler and to take a risk and withdraw from the plea agreement negotiated by

17

his first attorney, Amsel, in order to receive a possibly shorter sentence.  The petitioner does not allege that Seidler had a conflict of interest on any other grounds.  Because the petitioner's reason for hiring Seidler did not create a conflict of interest and there is no other evidence showing that Seidler had a conflict of interest, the petitioner's claim for ineffective assistance of counsel on this ground is dismissed.

B.

The petitioner also claims that Seidler provided ineffective assistance of counsel by giving objectively deficient advice in connection with the petitioner's withdrawal from the plea agreement and at sentencing.  To establish a claim of ineffective assistance of counsel, the petitioner must show both that: (1) his counsel's performance was deficient in that it was objectively unreasonable under professional standards prevailing at the time, and (2) his counsel's deficient performance was prejudicial to his case.  See Strickland v. Washington, 466 U.S. 668, 686 (1984); Bunkley v. Meachum, 68 F.3d 1518, 1521 (2d Cir. 1995).

The petitioner cannot meet the first prong of this test merely by showing that his counsel employed a poor strategy or made a wrong decision. Instead, the defendant must establish that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth

Amendment." Strickland, 466 U.S. at 687.  In fact, there is a "strong presumption" that defense counsel's conduct fell within the broad spectrum of reasonable professional assistance, and a defendant bears the burden of proving "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (citing Strickland, 466 U.S. at 688-89.)

To meet the second prong of the Strickland test, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; see also Herrera-Gomez v. United States, No. 08 Civ. 7299, 2009 WL 4279439, at *5 (S.D.N.Y. Dec. 1, 2009).  In the context of sentencing, the petitioner must show that but for counsel's ineffectiveness, there is a reasonable probability that the sentence imposed would have been different.  See United States v. Workman, 110 F.3d 915, 920 (2d Cir. 1997); see also Herrera-Gomez, 2009 WL 4279439 at *5.

1.

The petitioner contends that Seidler's interpretation of
Apprendi and its progeny and his assertion that the statutory
maximum sentence for the petitioner would be limited by the 188
kilograms to which the petitioner admitted at the plea
allocution, despite contrary statements by the Court and the
Government, constituted ineffective assistance.  The petitioner
further claims that Seidler stated that he had "nothing to lose"
because under the Supereme Court's decision in United States v.
Booker, 543 U.S. 220 (2005), the Court "could not impose a
sentence based on drug quantities that exceeded the 118
kilograms to which [the petitioner] admitted [at the plea
allocution.]"  (Petition at 20.)

    Although Seidler argued that the petitioner's statutory
maximum sentence should be limited by the fact that the
petitioner only admitted to 118 kilograms of cocaine, he asserts
that he never told the petitioner that he had "nothing to lose"
by withdrawing from the plea agreement because his sentence
would necessarily be limited to the drug weight that he admitted
to at the plea allocution under Booker.  (Seidler Decl. ¶ 7.)
Seidler maintains that he informed the petitioner of the
Government's position regarding the petitioner's sentence
exposure and the predicted sentencing range if the petitioner
withdrew from the plea agreement.  (Id.)  Seidler also reports
that he told the petitioner he "needed to consider those risks

20

in deciding [whether to withdraw from the plea agreement]."
(Id.)

Regardless of what Seidler said to the petitioner, this
Court can rely on the petitioner's sworn statements made in open
court.  See United States v. Hernandez, 242 F.3d 110, 112 (2d
Cir. 2001) (stating that a district court was "entitled to rely
on the defendant's sworn statements, made in open court, with
the assistance of a translator," in evaluating a claim of
ineffective assistance of counsel regarding the defendant's
withdrawal from a guilty plea).  At the hearing on the
petitioner's motion to withdraw from the plea agreement, the
petitioner acknowledged that without the plea agreement, the
Government would be "free to argue for a sentence in excess of
188 months imprisonment," the maximum possible sentence under
the plea agreement based on the petitioner's admission of 118
kilograms of cocaine.  (J.A. at A82:1-4.)  The petitioner
further indicated that he understood that the Government
intended to argue for a guideline sentencing range of 324 to 405
months.  (J.A. at A82:10-16.)  The petitioner acknowledged that
by withdrawing from the plea agreement, he was freeing the
Government to argue for a significantly higher sentence than
that provided in the agreement, and that, in any case, he was
facing a mandatory minimum sentence of 120 months.  (J.A. at
A82:17-25, A83:22-A84:1.)

Even if Seidler misinformed the petitioner about the risks he faced by withdrawing from the plea agreement, or the effect of Apprendi and its progeny, the petitioner cannot claim that he was prejudiced by Seidler's erroneous advice, because he was informed of the risks and potential consequences of withdrawing from the plea agreement in open court, and explicitly acknowledged that he understood them.  Ultimately, the petitioner made the decision to risk a higher sentence for the possibility of a lower sentence.  Because the petitioner's statements in open court demonstrate that the petitioner was aware of the consequences of withdrawing from the plea agreement despite any incorrect advice from Seidler, the petitioner has failed to establish the second prong under Strickland.  The petitioner's claim for ineffective assistance of counsel on this ground is therefore dismissed.

2.

The petitioner also asserts that Seidler provided ineffective assistance of counsel in connection with the petitioner's alleged offer to cooperate with the government. The petitioner contends that he always intended to cooperate with the Government and hoped to receive an appropriate sentence reduction.  The petitioner alleges that this was reflected in his plea agreement, which he claims contained a provision stating that the Government would consider filing a motion under

22

U.S.S.G. § 5K1.1 or Federal Rule of Criminal Procedure 35 to reduce the petitioner's sentence based on his cooperation.  The petitioner claims that despite his stated intention to cooperate, Seidler never informed him that withdrawing from the plea agreement could affect his ability to receive a sentence reduction recommendation from the Government.

Contrary to the petitioner's assertions, there was no provision in the plea agreement discussing a possible sentence reduction pursuant to U.S.S.G. § 5K1.1 or Rule 35.  Nor was there any discussion of cooperation with the Government at the plea allocution, or the hearing on the petitioner's motion to withdraw from the plea agreement.  In addition, Seidler submitted a declaration in which he stated "[The petitioner] never told me that he hoped to cooperate, much less that he expected to receive a sentence reduction through an application from the Government.  Had he raised such an issue, I would have told him that it would be unwise to [withdraw from the plea agreement], and that . . . his [plea] agreement did not foresee any possibility of credit for cooperation." (Seidler Decl. ¶ 8.)

The only evidence that the petitioner had any intention to cooperate prior to his withdrawal from the plea agreement is a letter from Seidler to the Assistant United States Attorney, indicating that the petitioner would be willing to assist the

23

Government in locating a person of interest, Henry Cespedes.[1]
(Pet'r's Mot. for Order to Show Cause Ex. C.)  This alone would
not typically warrant an application by the Government for a
sentence reduction pursuant to U.S.S.G. § 5K1.1, which allows
the Government, based on its sole discretion, to file a motion
for a sentence reduction based on a defendant's <u>substantial</u>
assistance in the investigation or prosecution of another person
who has committed an offense.  <u>See, e.g.</u>, <u>United States v.
Martinez</u>, 210 F.3d 356, 2000 WL 510143, at *1-*2 (2d Cir. 2000)
(summary order); <u>United States v. Brown</u>, 321 F.3d 347, 354 (2d
Cir. 2003); <u>United States v. Meng He</u>, 94 F.3d 782, 789 (2d Cir.
1996).  Nor would it warrant a similar application under 18
U.S.C. § 3553(e) which authorizes the Court to sentence a
defendant below a statutory mandatory minimum if the Government
makes a motion based on the defendant's stipulated substantial
assistance.  Seidler had no reason to expect the Government to
recommend a sentence reduction when the petitioner had no
discussions or agreements concerning cooperation with the
Government, and the Government did not accept the petitioner's
offer to help locate Cespedes.  Therefore, it was reasonable

---

[1] The petitioner points to letter and email correspondence that show his
interest in cooperating, and the refusal by the Assistant United States
Attorney to allow him to cooperate.  However, one letter referenced by the
petitioner is dated March 20, 2007 (Petition at Ex. 1), and the subsequent
letters to the petitioner from another lawyer are dated May 1, 2008 and
September 8, 2008 (Petition at Ex. 2), years after the petitioner withdrew
from the plea agreement.  Therefore, these documents do not support the
petitioner's claim that he expressed interest in cooperating with the
Government prior to his withdrawal from the plea agreement.

for Seidler not to consider the possibility of a sentence reduction for cooperation when advising the petitioner about the potential risks of withdrawing from the plea agreement. Seidler's failure to inform the petitioner that his ability to receive a sentence reduction for cooperation might be affected by withdrawing from the plea agreement was not objectively unreasonable given the circumstances, and therefore the petitioner has failed to meet the first prong of the Strickland test.  This is not a case where the petitioner claims that his limited offer of cooperation was not conveyed by Seidler to the Government.  It was conveyed, but it went nowhere.  As a result, the petitioner's claim for ineffective assistance of counsel on these grounds must be dismissed.

3.

Finally, the petitioner asserts that Seidler was ineffective because he failed to argue that the petitioner's prior conviction in Maryland was uncounseled.  The petitioner did not contest his Criminal History Category calculation based on the Maryland conviction in the plea agreement when he was represented by Amsel rather than Seidler.  (See J.A. at A12, A31:9-A43:13.)  The Pre-Sentence Report ("PSR") prepared by U.S. Probation Officer Michele Greer does not include any evidence suggesting that the petitioner's conviction in Maryland was uncounseled. (PSR at 5-6.)  As a result, the petitioner was

25

found to have three criminal history points based on the
Maryland conviction, which established a Criminal History
Category of II.  (PSR at 6; see U.S.S.G. chs. 4 pt. A & 5 pt.
A.)  There is no evidence in the record or otherwise that the
petitioner's conviction in Maryland was uncounseled and the
petitioner would plainly have had the right to counsel in
connection with his plea of guilty to a felony in state court in
Maryland in 1993.

The petitioner acknowledged that he reviewed the PSR with
Seidler, and he did not raise any objections relating to the
Maryland conviction to Seidler or to the Court.  (J.A. at
A297:22-25, A299:7-A300:9.)  Nor did he raise any issue
regarding the Maryland conviction at sentencing after the Court
stated that his Criminal History Category was II based on a
prior conviction. (See J.A. at A314:7-11.)

Because there is no evidence that the petitioner's
conviction in Maryland was uncounseled, there is no basis to
find that Seidler was ineffective for failing to argue this
point at the petitioner's sentencing.  The claim is therefore
dismissed.


III.

The petitioner also claims that he received ineffective
assistance of appellate counsel because his counsel on appeal

26

did not argue, despite requests from the petitioner, that the petitioner's guilty plea was null and void when the petitioner withdrew from the plea agreement.  However, such an argument would have been incorrect as a matter of law.

The petitioner alleges that this Court granted his motion to withdraw from the plea agreement because it found that the petitioner lacked understanding of the agreement, and therefore appellate counsel should have argued that the petitioner necessarily lacked the requisite understanding to plead guilty. (Petition at 26.)  This is incorrect.  The petitioner's guilty plea was separate and independent from the plea agreement.  This was made clear during the plea allocution and at the hearing on the petitioner's motion to withdraw from the plea agreement, when this Court emphasized that it was not bound by any of the stipulations or provisions of the plea agreement. (J.A. at A33:6-9, A81:8-12.)  In addition, this Court explicitly stated that the consequences and ramifications of the guilty plea are different from the plea agreement.  The Court explained that "[b]y the guilty plea, the petitioner admits guilt.  [W]hen the issue is the plea agreement and not withdrawing from the guilty plea, the considerations are somewhat different, because the [petitioner is not saying] 'I'm innocent' . . . ." (J.A. A69:18-A70:5.)  The petitioner sought to withdraw from the plea agreement because of a change in the law affecting sentencing

guidelines which he believed gave him the opportunity for a more favorable sentence than that stipulated in the plea agreement. (J.A. at A43; Add. at 3.)  At no time did the petitioner allege that he was innocent, or attempt to withdraw from his guilty plea, and there is no evidence that the plea was not made knowingly and voluntarily.  (See J.A. at A21-A25.)  This Court was generous in allowing the petitioner to withdraw from the plea agreement based on the changing law and the lack of prejudice to the Government.

Any argument that the petitioner's withdrawal from the plea agreement was effectively a withdrawal from his guilty plea is entirely unsupported by the law and evidence in the record.  As a result, appellate counsel's failure to assert this argument in the petitioner's appeal was not objectively unreasonable and thus fails to satisfy the first prong of the Strickland test. The petitioner's claim for ineffective assistance of appellate counsel is therefore dismissed.


IV.

The petitioner moves for this Court to issue an Order to Show Cause against Seidler and the Assistant United States Attorney responsible for his prosecution and the initial defense of the § 2255 motion for sanctions and contempt.  The petitioner claims that Seidler's statement in his declaration that the

28

petitioner never offered to cooperate with the Government is false, and that by submitting a false statement to the Court, Seidler and the Assistant United States Attorney may be held in contempt and sanctioned under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927.

The petitioner alleges that his offer to help the Government locate Henry Cespedes, reflected in a letter from Seidler to Goldberg dated September 10, 2004, demonstrates that he discussed cooperation with Seidler, making Seidler's contrary statement in his declaration false.  As discussed above, the petitioner's singular discrete offer to help the Government locate Cespedes is not the kind of substantial assistance contemplated by U.S.S.G. § 5K1.1, Fed. R. Crim. P. 35, or 18 U.S.C. § 3553(e).  In any event, the Government has complete discretion over the decision to make a recommendation for a sentence reduction based on cooperation.  See, e.g., Brown, 321 F.3d at 354; Meng He, 94 F.3d at 789.  In this case, the petitioner does not suggest, nor is there any evidence showing, that the Government had any interest in his offer to help the Government locate Cespedes.  Therefore, it was reasonable for Seidler not to consider the petitioner's narrow offer to help the Government locate Cespedes an offer to cooperate that could affect the petitioner's sentence.  The petitioner offers no evidence suggesting that he made any other offers to cooperate

29

with the Government prior to his sentence.[2]  In a case such as this, where the Court is faced with self-serving and unsupported allegations that are contradicted by a credible declaration by a trial attorney, the Court may defer to the trial attorney.  See Vargas v. United States, No. 00 Civ. 2275, 2007 WL 2246004, at *8 (E.D.N.Y. July 31, 2007).  The petitioner has not provided any evidence beyond his narrow offer to assist the Government in locating Cespedes, which the Government did not accept. Therefore, there is no basis to find that Seidler's statement that the petitioner did not discuss cooperation with him was false.  Accordingly, there is no basis to impose sanctions or hold Seidler or the Assistant United States Attorney in contempt for offering Seidler's declaration to the Court.  The petitioner's motion is therefore denied.

V.

The petitioner seeks an evidentiary hearing for each of his claims of ineffective assistance of counsel.

"To warrant a hearing on an ineffective assistance of counsel claim, the [petitioner] need establish only that he has a 'plausible' claim of ineffective assistance of counsel, not that 'he will necessarily succeed on the claim.'"  Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009) (quoting

---

[2] There is evidence of offers to cooperate subsequent to the petitioner's sentence.  However, Seidler's declaration stating that the petitioner made no effort to cooperate with the government referred to evidence prior to sentencing.  (See Seidler Decl. ¶ 8.)

Armienti v. United States, 234 F.3d 820, 823 (2d Cir. 2000)).

Although a hearing should usually be held when material facts

are in dispute, "a district court need not assume the

credibility of factual assertions . . . where the assertions are

contradicted by the record in the underlying proceeding."  Id.

at 213-14.  The Second Circuit Court of Appeals has held that

"when the [Court] that tried the underlying proceedings also

presides over the Section 2255 motion, a less-than full-fledged

evidentiary hearing may permissibly dispose of claims where the

credibility assessment would inevitably be adverse to the

petitioner."  Id. at 214.  Specifically, when a case involves

claims "that can be, and are often, made in any case, the judge

may properly rely on his or her knowledge of the record and may

permissibly forgo a full hearing . . . ."  Id. at 215 (internal

quotation marks and alterations omitted); see also Change v.

United States, 250 F.3d 79, 86 (2d Cir. 2001); Ferrell v. United

States, No. 08 Civ. 8245, 2011 WL 1496339, at *4 (S.D.N.Y. Apr.

20, 2011); Perez v. United States, No. 07 Civ. 11179, 2008 WL

2775856, at *5 (S.D.N.Y. July 1, 2008).

In this case, the petitioner has failed to establish

plausible claims for ineffective assistance of counsel on any of

the grounds alleged, and any material facts in dispute must be

resolved against the petitioner in light of the record.  Because

there is no basis for an evidentiary hearing on any of the petitioner's claims, his request is denied.

CONCLUSION

The Court has carefully considered all of the parties' arguments. To the extent they are not dealt with above, they are either moot or without merit. For the reasons explained above, the petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is **denied**. The petition is therefore dismissed. Because the petitioner has failed to make a substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c). The clerk is directed to enter judgment dismissing the petition and closing this case.

**SO ORDERED.**

Dated:    New York, New York
          May 6 , 2011

John G. Koeltl
United States District Judge